# THE STATE *v.* NOYES.

A statute making bowling alleys, situate within twenty-five rods of a dwelling house, nuisances, is not unconstitutional.

Nor will it be so, though the statute is to be in force only in those towns in which it is adopted in town meeting.

A grant to a municipal corporation of a power to make by-laws and ordinances, not inconsistent with the laws of the State, is constitutional.

An indictment, charging that the respondent " did open and let to use, and for use, a bowling alley, within twenty-five rods of a dwelling house," is sufficient.

An indictment, which contains sufficient allegations to charge a respondent, will not be impaired by other allegations, which are insensible or immaterial.

A party indicted for a nuisance, may be punished by fine, &c., though there be on judgment that the nuisance be abated.

A judgment that a nuisance be abated will only be rendered where it is alleged that the nuisance is continued at the finding of the indictment.

THE indictment alleged " that the legal voters of the town of Franklin, in said county, at a legal town meeting, duly warned and holden in said Franklin, (on the 14th day of March, A. D. 1854,) in pursuance of an article in the warrant for calling the said town meeting for that purpose, did then and there vote to adopt an act entitled ' an act to suppress bowling alleys,' passed by the legislature of said State, and approved by the governor thereof, (on the third day of July, A. D. 1845,) by force whereof the said act, and every portion thereof, then and there was adopted, and became, and ever since has been, and still is, the law of said State of New Hampshire within the said town of Franklin; and that Joseph Noyes of &c., well knowing that the said law was legally adopted as aforesaid, in and by the town aforesaid, did thereafter, (on the 18th day of March, 1854,) at said Franklin, open and let to use and for use a bowling alley, situated within twenty-five rods of divers dwelling houses, stores, shops and meeting houses, to wit, ten dwelling houses, four stores, four shops, and one meeting house; all situate and being within twenty-five rods of the said

The State *v.* Noyes.

bowling alley, so erected and kept in and for said use, by the said Joseph Noyes, as aforesaid, in said Franklin; and that he, the said Joseph Noyes, has used and let to others to use for hire, for bowling, in and upon the same, by day and in the night time, from the said eighteenth day of March, last past, to the day of the finding of this indictment, to the common nuisance of all the good citizens of this State living near thereunto and passing the same, to the evil and pernicious example of all others in like case to offend, contrary to the form of the statute in such case made and provided, *and against the peace and dignity of the State.*"

The respondent's counsel moved to quash the indictment,

I.   Because the act of July 3, 1845, is unconstitutional and void, not having been enacted and put in force by the action of the legislature, but by a vote of the citizens of Franklin, as set forth in said indictment; and, also, as being partial in its operations, and not general.

II.   Because said act of July 3, 1845, if otherwise constitutional, undertakes to determine questions of fact and law, affecting the rights of persons and property; is judicial in its character; and therefore improper, unconstitutional and void.

III.   Because said indictment does not set forth " fully and plainly, substantially and formally," any crime or offence with which the defendant is charged, so that he can, by the 15th article of the bill of rights, be holden to answer thereto.

IV.   Because, so far as said indictment is at all intelligible, it undertakes to charge the defendant with two distinct offences, arising under and created by distinct and different statutes, and punishable in different ways, but neither of which is " described fully and plainly, substantially and formally," in the allegations of the indictment.

V.   Because the only charges distinctly made against the defendant in said indictment, to wit, " that on the 18th day of March, 1854, at Franklin, in said county, he did open and

let to use and for use a bowling alley, situated within twenty-five rods of divers dwelling houses, stores, shops and meeting houses," &c., is not an offence against any statute of this State, even that of July 3, 1845.

VI. Because said indictment does not contain any allegation that the defendant has used, and let to others to use, a bowling alley of any description or location, for hire, for bowling in and upon the same by day and in the night time, from the 18th of March last to the day of finding said indictment; and if it did, such an allegation would describe no offence against any statute of this State.

VII. Because, if said indictment was intended to charge the defendant with keeping and maintaining a bowling alley in Franklin, from the 18th day of March last, contrary to the provisions of any supposed statute, its language entirely fails to describe such offence.

VIII. Because, if the court should hold the allegations of the indictment sufficient to charge the defendant with keeping and maintaining a bowling alley on the 18th of March last, the indictment is clearly defective as against a nuisance, inasmuch as it fails to aver the continuance of the nuisance, so that any judgment could be rendered upon it to abate the same, the only legitimate object of a prosecution of this character.

IX. Because the existence of a bowling alley, for a single day, as alleged in the indictment, even if opened and let to use and for use by the defendant, as alleged in the indictment, could not constitute it a public nuisance, even within the meaning of the act of July 3, 1845, and nothing else is alleged in the indictment.

X. Because said indictment does not charge the defendant with doing anything " unlawfully and injuriously," as it should have done if intended to charge him with maintaining a nuisance.

XI. Because said indictment is in other respects uncertain, loose, defective, informal and irregular.

The objections were overruled by the court.

A verdict of guilty was rendered, which the respondent moved to set aside, for the reasons assigned in the motion to quash the indictment.

He also moved in arrest of judgment, for the same reasons set forth in the motion to quash the indictment, and for the following additional reasons:

I.   That the act of July 3, 1845, was intended solely as a municipal regulation, to be enforced by the authority of the towns adopting the same.

II.   That the court has no authority under the statute of July 3, 1845, to impose any fine or other punishment, and can only order the abatement of the alleged nuisance.

III.   That the indictment containing no allegation of the continuation of the nuisance, no judgment to abate it can be rendered.

*Fowler & Mugridge*, for the respondent.

I.   The law under which the indictment in this case was found is unconstitutional and void.

1.   It is unconstitutional from the manner of its enactment.   By our constitution the supreme legislative power within this State is vested in the senate and house of representatives, collectively styled the general court of New Hampshire.   Const. pt. II, arts. 2 and 3.   The general court alone, under our constitution, possesses the power to make, ordain and establish orders, laws, statutes, ordinances, directions and instructions.   Const. pt. II, art. 5.   The general court has no authority to delegate the power to enact laws to any men, or body of men.   Nor has the general court any right to make the enactment of law depend on the assent or approval of any other body of men; not even upon the assent or approval of the whole body of the people. The people, by the adoption of the constitution, divested themselves of all legislative power, and vested it in the gen-

The State *v.* Noyes.

eral court. They can resume it only in the forms of the constitution, or by revolution.

Law being the rule of conduct prescribed by the legislative power for the government of the people, if the statute in itself give no evidence of legislative will, as a rule of conduct, the citizen cannot obey it. If it subject the legislative will to any other will, the citizen is not bound to obey it; in other words it is inoperative and void.

The act of July 3, 1845, authorizing the people of the several towns in this State to decide whether bowling alleys situate within twenty-five rods of certain other buildings, shall be deemed public nuisances, expresses no legislative will on this question, prescribes no rule for the conduct of the citizen, but delegates legislative power to the people of each town.

The form of the enactment is immaterial. The substance is, that the legislature undertake to authorize such towns as choose to enact the law in question.

The indictment alleges that " the legal voters of Franklin voted to adopt the act, by force whereof the said act, and every portion thereof, then and there was adopted, and became, and ever since has been, and still is the law of said State of New Hampshire within the said town of Franklin." In other words, the allegation is that the vote of the legal voters of Franklin, in town meeting assembled, made, enacted, put and continued in force a law of the State of New Hampshire. Such a proceeding is a violation of the letter as well as spirit of our constitution, and repugnant to the character of our institutions. 1 Story on the Const. 420, *Sturgess* v. *Crowningshield*, 4 Wheat. 122; *McCullock* v. *Maryland*, 4 Wheat. 419 ; *Rice* v. *Foster*, 4 Harring. 479.

Where the taking effect of a law is made to depend upon a future event which, like the popular vote in this case, is a mere expression of the same will and the same judgment as to the expediency of the law which the legislature would have exercised if they had enacted that the law should take

The State v. Noyes.

effect unconditionally, how can it be said that the law comes into force by virtue of the will and the judgment of the legislature? The event itself is an exercise of the will of the people, which determines the very question whether the law shall take effect or not. How can it be said that the legislature determine it?

By the theory of all American constitutions, assuming a representative principle as the foundation of their power of government, the legislative power is vested in special bodies, which precludes any other body from exercising the same functions by delegation. *Bradley* v. *Baxter*, Sup. Ct. of N. Y., April, 1853, Am. Law Reg. Sept., 1853; Law Mag. Aug., 1853; [*S. C.* 15 Barb. 122.]

The legislature have no right to submit directly to the people the question whether a proposed act shall become a law. *Johnson* v. *Rich*, 9 Barb. 630.

The power of enacting general laws cannot be delegated by the legislature, even to the people, from whom all governmental powers originally emanated. *People* v. *Collins*, Sup. Ct. of Mich. Am. Law Reg., Aug., 1854.

The power of delegation to the people as to general laws cannot exist, because if this was so, by the action of one of its departments this representative government would be transformed into a democracy, in which the legislature merely propose the laws and the people adopt or reject them. *People* v. *Collins*, Law Reg., Aug., 1854.

Under a well balanced constitution the legislature can no more delegate its proper function than can the judiciary. *Borough of West Philadelphia*, 5 Watts & Serg. 283.

Any law which subjects or makes the legislative will depend upon the will or the action of any other body of men, is void, and not entitled to the obedience of the citizen. *Rice* v. *Foster*, 4 Harr. 479.

A law, when passed by the legislature, should be a complete, positive and absolute law in itself, deriving its authority from the legislature, and not depending for the enact-

ment of its provisions upon any other tribunal, body, or persons. *Rice* v. *Foster*, 4 Harr. 479.

The legislature are by the constitution invested with no power to pass an act which is not a law in itself when passed, and has no force or authority as such, and is not to become or be a law until it shall have been created and established by the will and act of some other persons, or body. *Rice* v. *Foster*, before cited.

The act of July 3, 1845, is of this character. In a legal sense it is not a law, it is not complete and positive in itself. It is not a rule prescribed by the supreme power of the State to its citizens, enforcing some duty, or prohibiting some act, but was to become a rule only when enacted or sanctioned by the popular vote of a town, and then to be a rule prescribed not by the constitutional legislative power of the State, but by the power of a majority in a town over the minority. *Rice* v. *Foster*, as above.

2. It is unconstitutional from the nature and extent of its operation. The very idea of a law or statute is a general rule of universal application to all citizens throughout the government; yet the legislature undertake here to delegate the authority to enact, and the government in this indictment set forth a law of the State of New Hampshire within the town of Franklin.

Again, the law undertakes to declare a bowling alley, in certain localities, to be a public nuisance, that is, an injury or annoyance to all the citizens of the government, for that is the distinction between public and private nuisances. Yet the bowling alley thus situate is made a public nuisance only on condition that a majority of the voters acting at some legal meeting in the town where it is situated, vote it to be so; thus making a public crime the creature of the whims and caprices of the majority of voters at any legally notified town meeting.

II. The statute of July 3, 1845, if otherwise constitutional, undertakes to determine questions of fact and law

affecting the rights of persons and property, is judicial in its character, and therefore improper, unconstitutional and void.

What is, or is not, a public nuisance, is a judicial question, to be determined by the long established rules of proceeding in the courts of law. The legislature have no authority to exercise judicial power; yet, in this case, they undertake to assume the powers of a court of the highest judicial authority, and declare that under a certain condition of things, certain judicial results shall follow; or rather they undertake to delegate their assumed power, and they say that a majority of the voters at any town meeting may make such judicial decisions. This is clearly unconstitutional, as much as would be the authorizing of a majority of the voters at any town meeting to grant a new trial, or decree a divorce. *Merrill* v. *Sherburn*, 1 N. H. Rep. 199; *Clark* v. *Clark*, 10 N. H. Rep. 389; Opinion of Justices, 4 N. H. Rep. 565; *Ponder* v. *Graham*, 4 Flor. 23; *Smith* v. *Mc Carthy*, 11 Miss. 517.

III. The indictment does not set forth intelligibly and with legal certainty any crime or offence with which the respondent was charged. The proper mode of charging the respondent with a violation of the act of July 3, 1845, would seem to be, to allege that he kept and maintained a bowling alley, and permitted the same to be used contrary to its provisions.

IV. So far as the indictment is intelligible, it undertakes to charge the defendant with two distinct offences, one of opening and letting to others to use and for use a bowling alley, on the 18th of March, and the other, opening and letting to others use for hire a bowling alley, &c.; as if intending to charge violations of two statutes, for which different penalties are provided. This is clearly wrong. *State* v. *Nelson*, 8 N. H. Rep. 163; Carth. 226; *Rex* v. *Roberts*, 2 Burr. 983; 2 Hawk. P. C. 62, ch. 25, § 89; 4 Mod. 103; *Commonwealth* v. *Symonds*, 2 Mass. 168; Arch. Cr. Pl. 25.

V. The only charge distinctly made in the indictment

is that of opening and letting to use and for use a bowling alley, on the 18th of March. This is not an offence against any statute.

VI. The allegation of the continued use and letting for hire, is clearly defective. If that was intended to be charged as an offence, it is not done.

VII. The allegation of the continuance of the nuisance was essential, in order to obtain a judgment for its abatement. *Rex* v. *Stead,* 8 D. & E. 142.

VIII. The existence of a bowling alley for a single day, as alleged in the indictment, could not constitute it a public nuisance, even within the meaning of the act of July 3, 1845, and nothing else, is alleged. *Weld* v. *Hornby,* 7 East 195; *Rex* v. *Bussell,* 6 East 427; 3 Camp. 227.

IX. If the act of July 3, 1845, can be sustained at all, it can only be as a municipal regulation, to be enforced solely by the authority of the towns adopting it. Such seems to have been the opinion of the learned commissioners who compiled the laws in 1852, and they have placed it in the chapter providing for the removal of nuisances by health officers.

*George & Foster,* for the State.

The respondent was indicted for an offence defined by statute, but punishable by force of the common law. The act of July 3, 1845, entitled " An act to suppress bowling alleys," is as follows: " Be it enacted, &c., section 1. That any bowling alley, situate within twenty-five rods of any dwelling house, store, shop, school-house, or place of public worship, shall be taken and deemed to be a public nuisance. Section 2. This act shall not be in force except in such towns as shall, at some legal meeting, adopt the same." This is the whole of the statute. By the common law, various institutions and practices, deemed injurious to the public health, peace or safety, or offensive to the public morals, are declared to be nuisances. Such are disorderly and

gaming houses, houses of ill fame, &c. This statute is simply declaratory, and adds another to the catalogue of common law offences.

Two desirable results are to be reached by a judgment upon an indictment for a nuisance : first, its abatement, and secondly, the punishment of him who knowingly created it. The person is subjected to fine and imprisonment for the erection of the nuisance ; for its continuance, the court will order judgment of abatement. Roscoe's Crim. Ev. 799.

The respondent was indicted for opening and letting to use a bowling alley, in Franklin, on the 18th day of March, 1854, and continuing the same until the day of the finding of the indictment. By reason of a clerical error in that part of the indictment wherein the continuance of the nuisance was intended to be alleged, that part of the charge was not relied upon, and no testimony for the purpose of sustaining it was offered at the trial. The government did not ask then, nor does it now, a judgment for the abatement of the nuisance, but only on account of its creation. All the exceptions, therefore, to that part of the indictment become irrelevant to the matter now under consideration; and this is a sufficient answer to the sixth, seventh and eighth of the respondent's motions to quash, and to the third of his motions in arrest of judgment.

The first exception is, " Because the act of July 3, 1845, is unconstitutional," &c. Powers of local legislation may be delegated by the State legislature to towns. Such has long been the practice in this State, as applied to police regulations, laws relating to the extinguishment of fires, &c. Such enactments are in the nature of propositions, a mere acceptance of which calls the law into force. *The People* v. *Collins*, Sup. Ct. of Michigan ; Law Reg., Aug. 1854, and cases there cited; *Heisembrittle* v. *City Council*, 2 Mc-Mul. 233 ; *The State* v. *Clark*, 8 Foster's Rep. 176 ; *Respublica* v. *Duquet*, 2 Yeates 493 ; *Wadleigh* v. *Gilman*, 2 Fairf. 403 ; *Trustees of Paris* v. *Berry*, 2 J. J. Marsh. 482.

The act cannot be considered " partial in its operation," because it is a general proposition, which may be accepted by every town in the State.

II. The act of July 3, 1845, is not judicial in its character. It does not undertake " to determine questions of fact and law." It simply provides, in effect, that a bowling alley situated in a certain locality shall be deemed a nuisance. The facts are, of course, only to be found by a jury. Being found, the law applies to this state of facts the common law remedy relating to nuisances. 4 Bla. Com. 167. The law of 1845 extends its power to no case of controversy between party and party, nor to any decree or judgment affecting the title to property, as it must in order to render it judicial in its character. *Rice* v. *Parkman,* 16 Mass. Rep. 326.

III. The purpose of the 15th article of the Bill of Rights is, first, that the defendant may be apprised of the precise nature of the charge made against him ; secondly, to enable the court to determine whether the facts constitute an offence, and to render the proper judgment thereon ; thirdly, that the judgment may be a bar to any future prosecution for the same offence. 3 Stark. Ev. 1527.

Rejecting that part of the indictment which relates to the *continuando*, the remaining allegations entirely satisfy all these objects.

When it is alleged that the legal voters of Franklin, on the 14th day of March, 1854, adopted the act of July 3, 1845 ; that the respondent knew it, and that notwithstanding, on the 18th of March, 1854, he opened and let to use and for use a bowling alley, situated within twenty-five rods of the buildings mentioned in said act ; when it was asserted by the prosecuting officer, on the trial, that he asked for no conviction upon the remaining portion of the indictment, it would seem that the respondent, by means of a strenuous intellectual effort, should understand the nature of the charge against him.

That the indictment is sufficient to enable the court to render the proper judgment, and that it will be a bar to all future prosecutions for the same offence, we cannot doubt. *Commonwealth* v. *Pray*, 13 Pick. 363.

IV.   The fourth exception assumes, without any warrant whatever, that the prosecuting officer intended to bring the respondent within the provisions of the law against keeping a gaming house, or suffering any person, at any bowling alley, to play at any game whatever therein for money, hire, gain or reward, or to bet, &c.   (Rev. Stat., ch. 220, § 3.) The language of the indictment could warrant no such supposition; if it could, the objectionable words are contained in that part of the indictment which is rejected.

The first charge of the indictment, it seems to us, is laid in plain and apt words to express the creation of the nuisance, and its true meaning cannot be misunderstood.

So much of this indictment as alleges a continuance of the nuisance may be rejected, and still a conviction and judgment had upon the remaining portion of the indictment.

It is usual, in indictments for a nuisance, to allege its continuance, in order that the judgment of abatement may be had; (see Wharton's Prec. Ind. 441, &c.;) but the whole allegation describes but one offence, although it may be a greater, containing a lesser offence.   And the respondent, under an indictment for erecting and continuing a nuisance, may as well be convicted only of erecting it, as another respondent, under an indictment for breaking and entering and stealing, may be convicted of entering without breaking, or of simple larceny.

This principle has been applied to an indictment, charging that the respondent did set up and promote an exhibition, (*Commonwealth* v. *Twitchel*, 4 Cush. 74,) and to an indictment charging that the respondent did offer for sale, and did sell a lottery ticket.   *Commonwealth* v. *Eaton*, 15 Pick. 273. But it is a general rule, running through the whole criminal law, that it is sufficient to prove so much of the indictment

The State *v.* Noyes.

as shows that the defendant has committed a substantive crime therein specified. 2 Camp. 134, 584, 646; 1 Burr. 399; 5 East. 304. And where an offence exists by common law, and an additional punishment is inflicted by statute, the words *contra formam statuti* should be inserted, for if omitted, the offender can only receive judgment for a common law punishment, not for that prescribed by statute. 1 Ch. Cr. Law 290; *Commonwealth* v. *Seale*, 2 Bin. 232; *Pennsylvania* v. *Bell*, Ad. 171; *State* v. *Phelps*, 11 Vt. Rep. 117.

V. Our answer to the fifth exception, (in addition to what we have previously said applying to it,) is, that if the " only charges distinctly made," do not constitute an offence against any statute of this State, they do constitute an offence against the common law. We have said that the indictment charges an offence defined by the statute, and punishable by force of the common law; and where an offence, both by statute and common law, is badly laid under the statute, the judgment may be given at common law. *State* v. *Phelps*, before cited; 2 Law Rep. 49.

Our further reply to the eighth exception is, that it is never necessary, in an indictment for causing a nuisance, to allege its continuance. *State* v. *Hull*, 21 Maine Rep. 84.

As to the ninth objection, the statute is imperative and very clear; " any bowling alley, situate, &c. shall be taken and deemed to be a public nuisance." If the jury find the bowling alley to exist, it is a nuisance. Length of time wherein it has existed, cannot qualify it. If it might, where should the line be drawn within which it might not be deemed a nuisance?

And, finally, the respondent complains that the indictment does not charge the defendant with doing anything " unlawfully and injuriously."

To this we have only to reply, that when the fact laid in the indictment appears to be unlawful, it is not necessary to allege it to have been unlawfully done, unless it be a part of

the description of the offence as defined by the statute. *Commonwealth* v. *Twitchell*, 4 Cush. 74.

The further exceptions in arrest of judgment can only be suggested by the fact, that the commissioners who compiled the laws, have seen fit to combine 'and make into one chapter two entirely distinct and separate statutes. Rev. Stat. ch. 119, and Laws of 1845, ch. 245. But the compilation is not the law, and cannot define it. The collocation of these two chapters will not warrant the absurd inference that the Legislature intended to confer upon health officers the authority to remove bowling alleys.

BELL, J.   The case does not call for the discussion of the question of the constitutionality of submitting general laws to the vote of the people, and making their enactment dependent upon the popular vote.   Many laws have been so presented to the people, and acted upon by them, and it is not at once apparent that there can be any sound objection to the enactment of laws to take effect upon the occurrence of future events, such as the Legislature may prescribe.   Laws, framed to take effect upon conditions dependent upon the pleasure of parties to be affected by them, are common every where.

It seems to be generally conceded that powers of local legislation may be granted to cities, towns, and other municipal corporations.   And it would require strong reasons to satisfy us that it could have been the design of the framers of our constitution to take from the Legislature a power which has been exercised in Europe, by governments of all classes from the earliest history, and the exercise of which has probably done more to promote civilization than all other causes combined, which has been constantly exercised in every part of our country from its earliest settlement, and which has raised up among us many of our most valuable institutions.

The Legislature are vested with the power " to make,

ordain, and establish all manner of wholesome and reasonable laws," in the most broad and general terms, and their power can hardly be held to be limited in cases where such power has been constantly exercised in all former times, unless by provisions distinctly indicating such design. None such are pointed out. No mischiefs are suggested as having resulted, or being likely to result from local legislation, which could be supposed to require the prohibition to the Legislature to confer such powers. In the nature of things, such legislation must be not inconsistent with the laws of the State, and must be subject to the revision and repeal of the Legislature of the State. We are, therefore, unable to entertain a doubt that the Legislature may rightfully confer upon the cities, towns, and other municipal corporations, the power to pass such local regulations; and that the laws made by such bodies, in consistency with the general laws of the State, are valid.

This question arose in the case of *The State* v. *Clark*, 8 Foster's Rep. 176, upon an ordinance of the city of Concord, prohibiting the keeping of intoxicating liquors in restaurants and refreshment saloons, and the ordinance was held to be authorized by the charter, and the charter to be consistent with the constitution. Of the soundness of this decision we are unable to entertain any doubt.

Assuming that the Legislature has the right to confer the power of local legislation upon cities and towns, that is, the power to pass ordinances and by-laws, in such terms and with such provisions, in the classes of cases to which the power extends, as they may think proper, it seems to us hardly possible seriously to contend that the Legislature may not confer the power to adopt, within such municipality, a law drawn up and framed by themselves. If they may pass a law authorizing towns to make ordinances to punish the keeping of billiard rooms, bowling alleys, and other places of gambling, they may surely pass laws to punish the same acts, subject to be adopted by the town, before they can be

in force in it. It is not suggested that there is any rule which forbids the making of places for gambling public nuisances, and, consequently, punishable like other nuisances, or which prohibits the grant of authority to towns to declare such places to be nuisances; and there is, therefore, no difference in principle between the case of the statute before us, and any other statute proscribing certain conduct as criminal, and punishable within such jurisdictions as may adopt the law.

It is objected to this law, that if otherwise constitutional, it is forbidden by the constitution, because it undertakes to determine questions of fact and law, and is judicial in its character. What is or is not a nuisance is a judicial question, it is said, to be determined by courts, and this is clearly so. Nothing is a nuisance unless it is made such by the law, and to determine what is by the law a nuisance, is an exercise of judicial power. But the Legislature do not exceed their legitimate authority, when they make a change of the law, and constitute that an offence which was not such before, nor when they make certain acts an offence of a particular kind, within which they were not previously included. There may be an apparent unfitness sometimes in such legislation, but its validity has never been questioned. When the long list of offences given by Blackstone, (4 Com. 86,) were made treason, to which most of them had no pretence of resemblance; when lotteries were made common nuisances, (4 Black. Com. 168;) when the slave trade was made piracy by Congress; or, in our State, embezzlement was made larceny, it was never doubted, so far as this point was concerned, that the laws were effectual for the purposes designed. But it is not to be conceded that places of gambling are not nuisances, in the proper and legitimate sense of that word. They are certainly nuisances of the worst kind, in the sense in which disorderly houses are so called. And at common law, keeing a gaming house is a nuisance. 1 Hawk. P. C. 198; Ros. Cr. Ev. 795; 2 Ch. Cr. Law 674;

Arch. Cr. Pl. 363; *Commonwealth* v. *Pray*, 13 Pick. 359. It may be said that a bowling alley is not of itself a nuisance, since it may either remain unused, or it may be used only as a place of innocent amusement; that its injurious character depends upon the improper use alone. But the Legislature may well determine that an instrument which tends to facilitate vicious practices, is of itself an evil which ought to be prohibited.

There seems to us, then, to be no sound foundation for this exception.

It is further objected that no offence is sufficiently and properly described in this indictment. As the statute merely declares bowling alleys to be public nuisances, in certain situations, we have to look to the common law for the requisites of an indictment in such a case. Persons only are subject to indictment, and they must, therefore, be charged in an indictment in such terms as show that they create, keep up, or continue a nuisance, or are parties responsible for its existence. As nuisances are of very various kinds, agreeing in nothing but the common character of being annoying and injurious to the community, it is obvious that the terms of the charge must be as various as the nuisances themselves. The terms suitable to charge a nuisance by digging a dangerous pit in a highway, or causing it to be flooded with backwater, would not be suitable to allege the keeping of a disorderly house, or the making of a neighborhood unwholesome by offensive smells or poisonous gases. We have examined the forms of indictments in the books within our reach, and find the general form to be, "unlawfully did keep and maintain a certain common gaming house," "and cause and procure divers idle, &c., persons to come together to play at a certain unlawful game," &c., Arch. Cr. Pl. 363; " did keep and maintain a certain disorderly, &c., house, and cause persons of evil name, &c. to come together, there drinking," &c., C. C. C. 533; " did keep and maintain a certain disorderly room for

public dancing, and cause persons of evil name, &c. to come together," &c.; " did keep and maintain a certain disorderly house, and cause certain evil disposed persons to come together, fighting cocks," &c.; " a certain gaming house did unlawfully keep and maintain, and cause idle persons to come together, and game and play together," &c.; " a certain common gaming house, and in it a common gaming table, &c., commonly called an E. O. table, unlawfully did keep and maintain, for divers idle, &c. persons to come together to play, &c., and caused and permitted such persons to remain and game," &c. Chitt. Cr. Law 673, 674, 675, 676, 677.

The allegations of the present indictment are somewhat peculiar. After reciting the adoption of the law, it alleges that the defendant, well knowing that fact, did on, &c. at &c. open and let to use and for use, a bowling alley, situate within twenty-five rods of certain buildings named, all situate and being within twenty-five rods of said bowling alley, so erected and kept in and for said use by said defendant.

The question is whether this indictment sets forth " distinctly and formally " such acts of the defendant as connect him criminally with the bowling alley, and subject him to punishment. The direct allegations are that " he did open and let to use and for use a bowling alley, situate," &c.

In most cases, the things which are in law deemed nuisances, because of their injurious or offensive character, may be of themselves indifferent, or they may be nuisances only under special circumstances. In all such cases it is, therefore, necessary to allege the injury or inconvenience they occasion. As in the case of a disorderly house, that idle and ill behaved people resort there. But it may be that a fact is in itself a nuisance, or, as in the present case, it may be made a nuisance by statute. In such a case, it is not necessary to allege any fact, in addition to those required by statute, to give it the character of a nuisance. Thus, in the present case, the statute declaring that a bowling alley,

situate within twenty-five rods of a dwelling-house, is a nuisance, it is not necessary to allege any other fact to give it that character.

To charge a man with an offence connected with a nuisance, it must be alleged that he neglected some duty, or he did some act promotive of the nuisance, and in violation of his duty as a citizen. In this case, there is no question of negligence. The inquiry is, what must a man do to make himself liable. The first principle is, that it is a misdemeanor to occasion a nuisance; and the second, that in misdemeanors all are principals. Any act, then, that would make a man an accessary before the fact to a higher offence, will make him a principal in a misdemeanor. To erect, to maintain, to keep, to make use of, to assist, or encourage others to do either of these things, is to participate in an unlawful act, and, of course, to be guilty. Ordinarily we should expect a charge of this kind to be that the party did erect, or keep, or maintain such a bowling alley. Those, as we have seen, are the usual allegations, but they are by no means essential, and cases may be supposed where these terms would not, either technically or naturally, describe the part taken by a defendant; and they are, consequently, by no means essential, and any language which properly describes the acts done by the party in connexion with the nuisance, may be equally sufficient in an indictment. Here the words used are, " *did open and let for use,*" which seem to us to be, substantially, *did offer for use and let for use.* Now it seems to us very clear that, to offer a bowling alley for use, or to let a bowling alley for use, after it has been declared by law a nuisance, is an illegal act, which subjects the party to prosecution and punishment. They are acts having a direct tendency to encourage others to make use of such alley. A party can have no agency in encouraging the use of a thing thus obnoxious, without liability to punishment. We think, therefore, that enough is alleged in this indictment to subject the respondent to punishment.

---
The State *v.* Noyes.
---

If the indictment had alleged that the defendant, on, &c. at, &c., a certain bowling alley, erected and kept for use as such, did open and let to others for use, it would be a sufficient charge that he unlawfully promoted a nuisance. Though this indictment fails a little in distinctness, we think it admits of no other construction, and that a party accused could not be misled nor left in uncertainty, as to the nature of the charge intended to be brought against him.

Supposing the indictment sufficiently to describe the offence intended, there seems to us no difficulty growing out of expressions which seem to be applicable to offences created by other statues. So far as they are not pertinent to the real accusation, they are to be merely rejected.

There can be no question that a party, charged with causing or continuing a nuisance, is, upon conviction, to be punished by fine and imprisonment at common law. 4 Black. Com. 167; Steph. Cr. Law 102; Arch. Cr. Pl. 362; 1 Hawk. P. C. 200; *State* v. *Hull*, 21 Maine Rep. 84.

The judgment that the nuisance be abated, can only be rendered where it appears that the nuisance is continued to the finding of the indictment. Arch. Cr. Pl. 361; *King* v. *Stead*, 8 D. & E. 143; 21 Maine Rep. 84.

It is not contended that such continuance is here sufficiently alleged. A clerical omission has rendered the allegations, on that point, imperfect. But the residue of the indictment is not impaired by the introduction of these defective allegations.

The respondent's objections not being sustained, there must be

*Judgment on the verdict.*